TARANTO, Circuit Judge,
dissenting.
In my view, Spinal Kinetics failed as a matter of law to show, by clear and convincing evidence, that asserted claims 29-31 of Patent No. 7,429,270 are invalid for inadequacy of the written description. In particular, Spinal Kinetics offered no clear and convincing proof that the difference between the “openings” of the claims and the grooves of the written description is one that (in the eyes of skilled artisans) has any effect, let alone an effect that is difficult to predict, on fulfillment of the identified purposes of the claims at issue. Nor is there any basis for finding the written description inadequate to support the “flexible core” limitation (or one other limitation for which the district court itself rejected Spinal Kinetics’s written-description challenge). I therefore respectfully dissent from the majority’s affirmance of the judgment that the patent claims are invalid.
Regarding the judgment of noninfringement, which must be addressed if the invalidity judgment is reversed, I conclude that the district court relied on an erroneous construction of the claim term “fiber system.” That error cannot be disregarded as one we can be confident had no effect on the verdict of noninfringement, for the usual simple reasons. The jury did not specify that it found noninfringement on a basis other than the incorrectly construed limitation; there is ample (perhaps conclusive) evidence that this limitation is met under the proper construction; and there is sufficient evidence to have allowed the jury to find that the other limitations are met. The jury verdict of noninfringement therefore must be vacated. Accordingly, I would remand the case for a determination, presumably through a new trial, of whether the accused products infringe under the proper claim construction.
I
A
The written-description challenge in this case is to structural claim language that is broader than the specific embodiments disclosed in the written description. This is not a case — such as some cases involving genetic or chemical inventions — in which the claim language at issue is functional rather than an identifier of structure. See, e.g., Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1349-50 (Fed.Cir.2010); Regents of University of California v. Eli Lilly & Co., 119 F.3d 1559, 1568 (Fed.Cir.1997). Nor is it a case in which the claim language includes details that do not appear in the written description. See, e.g., Purdue Pharma L.P. v. Faulding Inc., 230 F.3d 1320, 1327 (Fed. Cir.2000). The written-description question here is the familiar one involving whether the claim language is simply too broad given the disclosure — notwithstanding that claim language may be and commonly is broader than described embodiments, as it identifies what aspects of the disclosed embodiments matter. See In re Rasmussen, 650 F.2d 1212, 1215 (CCPA 1981) (“[Tjhat a claim may be broader than the specific embodiment disclosed in a specification is in itself of no moment.”); Ronald Slusky, Invention Analysis and Claiming: A Patent Lawyer’s Guide at 32-33 (2007) (discussing claim drafting *1347 process of identifying what features of embodiment matter).
In a case like this one, the written-description requirement must focus on whether the way in which the (broader) claim term differs from the (narrower) disclosure is pertinent to fulfilling the identified purposes of the claims at issue. More specifically, for a challenger to prove insufficiency of the written description to support the claim language, the challenger must identify the respect in which the claim language differs from the disclosed embodiments. At a minimum, the challenger must then demonstrate that, in the eyes of a relevant skilled artisan, that particular difference has a material effect on whether the product or process would achieve the aims of the claims at issue, with materiality of the effect not the same as non-obviousness but related to predictability (this case requiring no further definition of that relation). See Ariad, 598 F.3d at 1351, 1352; Bilstad v. Wakalopulos, 386 F.3d 1116, 1124-25 (Fed.Cir.2004) (inquiry into whether skilled artisans “would not readily discern that other members of the genus would perform similarly to the disclosed members, i.e., if the art is unpredictable”); In re Curtis, 354 F.3d 1347, 1355, 1358 (Fed.Cir.2004) (inquiry into whether skilled artisan “could not predict the operability in the invention of any species other than the one disclosed”; focus on “unpredictability in performance”); Rasmussen, 650 F.2d at 1215 (inquiry into whether difference from described embodiment is “unimportant” to operability).[1]
It is commonly true, of course, that a skilled artisan has to make some judgments when seeking to implement the patent, whether it is the described embodiments or an undescribed embodiment of the broader claim that the artisan is proceeding to make and use. If those judgments are sufficiently unguided by the written description, unknown to a skilled artisan, or uncertain (requiring undue experimentation), at least an enablement problem may arise — though there is no enablement challenge here. What is critical for present written-description purposes is this: if there is materially the same range of implementation judgments for the described embodiments and the broader claim — such as, here, how many openings/grooves to have, their shape, how close to the center and far from the periphery they would locate the fibers passing through — the need for such judgments is irrelevant to the written-description question. What matters is only the particular difference between the narrower embodiments and broader claims.
Recognizing the burden of proof carried by the challenger, this approach implements the Ariad formulations: whether the inventor “possessed the claimed invention,” or “actually invented the invention claimed.” 598 F.3d at 1351, 1355-56. If the challenger does not make the showing identified above, the relevant skilled artisan will understand that, by expressly describing certain embodiments, the inventor possessed the more broadly claimed invention, because the differences are immaterial to what the inventor invented. See In re Peters, 723 F.2d 891, 893 (CCPA 1983) (reversing claim rejections that were based on a difference between the broader claim terms and the narrower disclosure, because “[m]ost importantly, one skilled in the art would readily understand that in practicing the invention [the difference] is *1348 unimportant”). If the . challenger has made the identified showing, the relevant skilled artisan will understand that the inventor had not (based on the disclosure) addressed issues of consequence to fulfilling the invention’s purpose, and so did not possess in full the broadly claimed invention. See Ariad, 598 F.3d at 1353 (“Requiring a written description of the invention limits patent protection to those who actually perform the difficult work of ‘invention’ — that is, conceive of the complete and final invention with all its claimed limitations.”).
At the same time, this approach aligns with a critical role of the written-description requirement in a case involving a question of breadth. In such a case, the requirement serves to prevent an inventor from acquiring exclusivity rights over potential products or processes that present problems in achieving the invention’s aims that he or she has not solved. See Fiers v. Revel, 984 F.2d 1164, 1171 (Fed.Cir.1993) (“attempt[s] to preempt the future before it has arrived” are “not in compliance with the description requirement”). It thus confines patents to the problems the inventor solved and leaves to other people the solutions they identify that the inventor did not.
B
In this case, Spinal Kinetics failed to present the proof required to show an insufficient written description. The difference between the claimed “openings” and the disclosed “grooves” is simply that, for a groove, the space remains open at the perimeter whereas, for an “opening,” it need not be: “opening” covers slots wholly interior to the outer boundary of the plate. But Spinal Kinetics did not prove that that difference — potential closure at the perimeter — had any effect on the ability of the invented implants to fulfill their purpose.
The evident role of the grooves is to prevent sideways movement of the fibers, along the perimeter of the plate, as they hold the components of the implant together. See '270 patent at col. 3, lines 27-30 (“By guiding the fibres in the grooves the fibre system can be so anchored on the cover plates, that in the case of tensile forces acting on the fibres no slipping of the fibres on the lateral sides is possible.”) (emphasis added). Nothing in Spinal Kinetics’s proof showed that closing the space at the perimeter affects that function (let alone in an unpredictable way). More generally, nothing in Spinal Kinetics’s proof showed that the difference between grooves and interior openings was material to the working of the claimed device. The two witnesses on which Spinal Kinetics relies for its written-description challenge are its expert, Dr. Lee, and its Research and Development Manager, Mr. Koske. Neither they, nor the documents on which they relied, showed (by clear and convincing evidence) how the way in which “openings” differ from “grooves” makes any material difference to the working of the claimed device.
Dr. Lee’s key testimony was his statement that “the stress or strain on the fibers” is affected by whether the fibers pass through the plate near the center or near the perimeter. See J.A. 20853 (Tr. 2456:11-2458:11). But, decisively, the distance from the center (or perimeter) is not the respect in which “openings” differ from “grooves.” Whether the space at the perimeter remains open (as with grooves) or closed (as with openings) plays no role in determining how far from (or near to) the center the fibers pass through the plate: if a groove extends deep toward the center, the fibers will pass through the plate there, just as they will if openings are placed at that location. Dr. Lee’s testimony, not addressing the difference between *1349 openings and grooves, is irrelevant to the analysis.
Nothing else Dr. Lee said makes up for the irrelevance of the foregoing testimony. He testified that he could not find the word “openings” in the specification, see Joint App. 20852 (Tr. 2453:1-13), but that is itself of no importance: the written-description requirement is about support in substance, not about labels. Kao Corp. v. Unilever U.S., Inc., 441 F.3d 963, 967-68 (Fed.Cir.2006). Dr. Lee also stated that there was a “significant difference ... in biomechanical properties” between the broader claim term and the narrower disclosure. See Joint App. 20853 (Tr. 2456:11-2458:11). But without the eventual identification of what difference in properties he meant, that sentence is entirely a conclusory opinion, which is insufficient to meet a burden of proving facts by clear and convincing evidence. See, e.g., ActiveVideo Networks, Inc. v. Verizon Comm’ns, Inc., 694 F.3d 1312, 1327, 1330-31 (Fed.Cir.2012); Krippelz v. Ford Motor Co., 667 F.3d 1261, 1269 (Fed.Cir.2012); Ashland Oil, Inc. v. Delta Resins & Refractories, Inc., 776 F.2d 281, 294 (Fed.Cir.1985). It was only the distance-from-center testimony discussed just above that gave any concrete factual content to the otherwise-eonclusory assertion, but that basis, as shown, is irrelevant to the required analysis.
Mr. Koske likewise did not present the required proof, either through his testimony or through the exhibits about which he testified. That evidence established that, at one point, Spinal Kinetics had one or more prototypes with grooves (and many other features) and that it eventually settled on a design that had interior openings (and many other features). But nowhere did Mr. Koske testify, and nowhere do the exhibits show, that the earlier prototypes were rejected because they had grooves as opposed to interior openings or that the Spinal Kinetics product-development process focused on that difference. See J.A. 20757-78 (Tr.2076:21-2081:13). The evidence identifies “technical hurdles” involving whether to use fibers or adhesive to anchor the fiber system to the cover plates, see J.A. 20736 (Tr.1991:15-1993:3), and concerns about what shape the interi- or openings should be to preserve disc strength, J.A. 20737 (Tr.1996:10-1997:12), but none of the evidence addresses the differences between grooves and interior openings in relation to those or any other issues. In none of the testimony of Mr. Koske or the documents cited by Spinal Kinetics, Brief for Appellee at 51-52, or the evidence cited by the majority opinion (at 15-16) is there any indication about how much if any experimentation or study Spinal Kinetics did to choose between interior openings and grooves or about any material challenges encountered when considering use of interior openings versus grooves (there can be a plurality of either, and each can cause the fiber location to be almost anywhere in the plate). In my view, this is not clear and convincing evidence.
Spinal Kinetics thus failed to establish the importance of the openings/grooves difference. And that conclusion is reinforced indirectly by the patent itself — specifically, by the fact that the written description is not actually limited to using grooves for the fibers. The majority states that the specification “discloses a series of examples of how the fiber system may be anchored on the cover plates” and that “[a]ll of these examples employ ‘grooves,’ not slots or openings on the plates.” Maj. Op. at 13. But the specification, while reciting grooves in some of the examples it gives for how “anchoring of the fibres on the cover plates can be carried out,” includes other examples that are described without any mention of grooves at all. '270 patent at col. 3, lines *1350 22-62. One separately stated example simply calls for “adhering the fibre system on the cover plates,” while another calls for join the plates “in a form-locking manner.” Id. at lines 35 & 42-44. Thus, grooves are not part of all of the anchoring embodiments disclosed in the '270 patent.
C
The jury verdict of insufficient written description for the claim at issue cannot be supported on any other ground. On appeal, Spinal Kinetics argues that substantial evidence supports finding that two other claim limitations — “substantially rigid bone contacting plate” and “flexible core” — lack adequate, written-description support. The district court rejected the first contention but accepted the second. Both contentions are meritless.
Spinal Kinetics did not prove that the specification, which discloses “closing plates” that “are made from titanium or a titanium alloy,” '270 patent, col. 6, lines 4-5, fails to adequately describe the claimed “substantially rigid bone contacting plate.” The cover plates, as stated in the specification, are “anchor[ed to] the fibre system” in order to ensure “the intervertebral implant remains stable even under the greatest loads and the fibre system is capable to withstand even considerable tensile forces.” '270 patent, col. 2, lines 35-37.
Spinal Kinetics argues that the written description is inadequate because nowhere but the claims does the specification use the terms “rigid” or “substantially rigid.” But the “disclosure as originally filed does not ... have to provide in haec verba support for the claimed subject matter at issue,” Cordis Corp. v. Medtronic AVE, Inc., 339 F.3d 1352, 1364 (Fed.Cir.2003), and Spinal Kinetics failed to present any evidence, much less clear and convincing evidence, either (1) that the titanium closing plates described by the specification and depicted in' Figures 3 and 4 were not “substantially rigid” or (2) that a skilled artisan, reading the description of the properties and functions of the closing plates (ie., titanium closing plates used to stabilize the intervertebral implant), would not reliably predict that “substantially rigid” closing plates achieve the desired properties of the claimed device. See In re Smythe, 480 F.2d 1376, 1383 (CCPA 1973) (“[T]he specification clearly conveys to one skilled in the art that in this invention the characteristics of a fluid are what make the segmentizing medium work in this invention.”).
For the “flexible core” limitation, Spinal Kinetics rests its challenge on the claim term’s purported incompatibility with the disclosure of “an elastically deformable formed body ... with an incompressible core, preferably a liquid core.” '270 patent, col. 5, lines 15-17. This argument, though the district court accepted it, is plainly incorrect. An “incompressible core” is in no way irreconcilable with a “flexible core.” Incompressible and flexible simply do not conflict: a squeezed balloon that readily deforms while maintaining a constant volume is simultaneously flexible and incompressible. Thus, the jury could not have reasonably concluded that, because the patent specifically discloses an “incompressible core,” the invention could not also include a “flexible” core.
Accordingly, I conclude that there has been no clear and convincing evidence that the written description inadequately describes the claimed inventions. I would reverse the district court’s denial of judgment as a matter of law that Spinal Kinetics failed to prove invalidity.
II
As to the judgment of noninfringement, I conclude that it relies on an incorrect construction of the claim term “fiber system.” The error could well have been the *1351 basis for the jury verdict, which therefore must be vacated. The case should be remanded for further proceedings on whether the accused products infringe under the proper claim construction.
The district court construed “fiber system” as “a collection of fiber strands joined to the third and fourth plates and capable of absorbing tensile forces and constraining radial expansion of the flexible core.” Synthes USA LLC v. Spinal Kinetics, Inc., No. C-09-01201, 2010 WL 2573379, at *7 (N.D.Cal. June 23, 2010). That importation of functional requirements is incorrect, because the term “fiber system” is entirely a structural one. “Where a claim uses clear structural language, it is generally improper to interpret it as having functional requirements.” Schwing GmbH v. Putzmeister Aktiengesellschaft, 305 F.3d 1318, 1324 (Fed.Cir.2002); accord Toro Co. v. White Consol. Indus., Inc., 266 F.3d 1367, 1371 (Fed.Cir.2001) (“An invention claimed in purely structural terms generally resists functional limitation.”). Spinal Kinetics offers no convincing reason to deviate from the general rule in this case.
Spinal Kinetics notes (correctly) that the specification ascribes functions to the “fiber system,” including to constrain the radial expansion of the core that it surrounds, see, e.g., '270 patent, col. 1, lines 26-34, but that is not a reason to add those functions to the simple, clear “fiber system” of the claim. Where the claim’s-structural definition of a term leaves ambiguities, such as an unaddressed question of degree, this court has said that “it is ‘entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language.’ ” ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1375 (Fed.Cir.2009) (quoting Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed.Cir.2005)). No such ambiguity exists here.. Claim 29 requires that the “fiber system” (1) “at least partially .surround[ ] the core,” (2) “is at least partially received within the plurality of openings formed in the third and fourth plates so that the fiber system is joined to the third and fourth plates,” and (3) is “at least partially surround[ed]” by “an elastic sheathing body.” '270 patent, col. 8, lines 41-47. Spinal Kinetics points to no open questions for which the claim itself “does not suggest” an answer. See ICU Med., 558 F.3d at 1375-76. The term “a fiber system” is a straightforward structural limitation that needs no further construction, much less the addition of functional qualifiers. See 02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1362 (Fed.Cir.2008).
Because the jury was given a flawed claim construction, and there was no separate jury finding of noninfringement on another ground and the jury could easily have found the “fiber system” element satisfied under the correct construction, the verdict of noninfringement must be vacated. See August Tech. Corp. v. Camtek, Ltd., 655 F.3d 1278, 1286 (Fed.Cir.2011). At the same time, Synthes has not shown that it is entitled to judgment of infringement, ie., that no jury could now reasonably find noninfringement, considering all of the claim limitations at issue, under proper instructions.
Therefore, the judgment of noninfringement should be vacated and the case remanded to the district court. I would not further constrain the district court’s discretion about how to proceed on remand, including what might be decided on new summary judgment motions and whether to reconsider any evidentiary rulings that might be seen in a different light in any new trial. And, regarding the cross-appeal filed by Spinal Kinetics to challenge the district court’s denial of its motion for attorney’s fees, it suffices to say that my *1352 view of Synthes’s appeal would mean that Spinal Kinetics would no longer meet even the threshold condition of being a prevailing party.

. A patent’s written description may describe more than one purpose or problem to be solved, and a particular claim may not address all of them. See, e.g., Phillips v. AWH Corp., 415 F.3d 1303, 1327 (Fed.Cir.2005) (en banc). The written-description analysis of a particular claim must focus on the purposes and problems relevant to that particular claim.